```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
               SOUTHERN DIVISION AT LONDON
```

**CIVIL ACTION NO. 2007-65**

**ZOLA WELLS**

                                                       **PLAINTIFF**

**VS.**               **MEMORANDUM OPINION and ORDER**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY**           **DEFENDANT**

      This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 10) and the cross-motion for summary judgment of the Commissioner (Doc. 12). Plaintiff filed this action seeking review of the Commissioner's decision to terminate her disability benefits upon finding that she is no longer disabled.

      In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298(6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

There is no presumption of continuing disability.  <u>Watts v. Commissioner of Social Security</u>, 179 Fed. Appx. 290, 292 (6th Cir. 2006).  The Administration has promulgated regulations providing the method for evaluating a person's continuing disability. 20 C.F.R. §§ 404.1594 and 416.994.

The Commissioner must first determine whether there has been any medical improvement in the claimant's impairment(s). "Medical improvement" is defined as:

> any decrease in medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s).

20 C.F.R. § 416.994(b)(1)(I).

If the Commissioner determines that there has been medical improvement, the evaluation turns to whether the claimant can engage in substantial gainful activity.  <u>Kennedy v. Astrue</u>, No. 06-6582, 2007 WL 2669153 (6th Cir. Sept. 7, 2007).  If the Commissioner determines that the claimant's improvement is related to her ability to work, and the claimant is able to engage in substantial gainful activity, then the claimant's benefits may be terminated.  <u>Watts</u>, 179 Fed. Appx. at 292 (citing 20 C.F.R. § 404.1594(a)).  The Commissioner has the ultimate burden of proof in termination proceedings.  <u>Kennedy</u>, 2007 WL 2669153 at *4.

In the case at bar, the claimant is forty-one years old and has graduated from high school.  The claimant has never worked

2

and has no relevant past employment.

The claimant was born with only one functional kidney. At the time of the most recent favorable decision, December 9, 1986, claimant's functioning kidney had deteriorated to such a point that she was awaiting a kidney transplant and was about to begin dialysis. Her creatinine readings ranged from 4.0 to 10.3. The Commissioner originally granted the claimant disability benefits with an onset date of December 23, 1985 upon finding that she met Listing 6.02(C)(7).[1]

In January 1987, the claimant had a successful kidney transplant. Her creatinine readings range from 1.3 to 1.4. The claimant alleges that although the kidney is working properly, she has to take Prednisone and Imuran to prevent rejection of the transplanted kidney. She alleges that these drugs cause her extreme fatigue and sleeplessness. She also argues that her long term drug use has caused steroid induced myopathy. The claimant further argues that she suffers from Menier's disease, which is an inner ear problem affecting balance, and carpal tunnel syndrome.

The ALJ determined that the claimant has had medical improvement since December 9, 1986, the date of the most recent

---

[1] Listing 6.02(C)(7) provides:
Impairment of renal function, due to any chronic renal disease expected to last 12 months . . . With: . . . C. Persistent elevation of serum creatinine to 4 mg. per deciliter (100 ml.) or greater or reduction of creatinine clearance to 20 ml. per minute (29 liters/24 hours) or less, over at least 3 months, with one of the following: . . . 7. Persistent hemotocrits of 30 percent or less.

favorable decision. Specifically, she no longer meets Listing 6.2, impairment of renal function, which was the basis of the original disability finding. In making this determination, the ALJ stated:

> [The claimant] no longer meets/equals Listing 6.02, kidney transplant and she never has met or equaled 1.02B, carpal tunnel syndrome, per medical expert testimony. Step 3 asks whether medical improvement has occurred. Dr. Goldin's testimony was that the claimant had a kidney transplant in 1987, at which time she met listing 6.02. Now [November 2005] her treating physician, Dr. Pampati, opines at 64F that she has arthralgia due to steroid-induced myopathy. Yet consultative evaluator Dr. Helms states in 48F that he found no side effects from the transplant. Dr. Richard Jackson, another administrative medical expert, testified in 2002 before the undersigned, stating that he found no objective evidence of fatigue, nothing in her recovery to suggest complications. Dr. Goldin's opinion is that Dr. Pampati is taking her subjective complaints and combining this with his clinical judgment, arriving at a disability assessment of 100%. Dr. Goldin points out that Dr. Pampati could have taken an enzymes test and muscle biopsy to give some objective support to the diagnosis; he agrees with Exh. 66F that the claimant has no evidence of acute or active inflammatory arthritis, and nothing in the examination of 06/25/05 suggests fatigue. Treating physician Pampati summarily dismisses fatigue, etc. as "steroid myopathy is also a consideration, which may contribute to fatigue, weakness, etc." This casual offhand remark prompted the court remand. In actuality, Dr. Pampati was taking subjective complaints and transposing them in to diagnoses, according to Dr. Goldin, who says not every case of prednisone ingestion results in muscle fatigue or aching, it is a very vague diagnosis, and changing the prescription might give better results. Dr. Goldin finds no evidence of reaction to any statins such as muscle aches and weakness; it is mostly a "waste basket" assessment, he testified, and the claimant could certainly perform sedentary and light work with some restrictions on heights and dangerous machinery due to pain.
>
> Concerning carpal tunnel syndrome, it does not meet or equal a listing, in the opinion of Dr. Goldin. In fact, no electromyogram or nerve conduction velocities tests confirm that is exists and it merely represents another loose term used casually by Dr. Pampati without any history of surgical release. She does not complain to the undersigned of needing braces, just the fatigue again. Dr. Goldin says the

allegation fails secondary to vagueness. (AR 289-90).

The ALJ also found the medical improvement relates to the claimant's ability to work.[2] Having found that the claimant has no past relevant work, the ALJ moved to the final step to determine whether the claimant can perform any work available in the economy.

The ALJ asked the vocational expert to consider a person with a twelfth grade education, who is literate, is a certified nursing assistant, but has never worked. He added that this person is capable of light work but cannot climb ropes, scaffolds, or ladders but may frequently climb stairs or ramps. She may frequently balance, stoop, crouch, kneel and crawl. She must avoid production work requiring repetitive use of the hands, working at heights or around dangerous machinery.

The vocational expert opined that a person with this RFC is capable of performing the jobs of housekeeper, 1,300,000 jobs nationally and 27,000 jobs in Kentucky, gate keeper, 550,000 jobs nationally and 11,000 jobs in Kentucky, and order caller, 50,000 jobs nationally and 1,000 jobs in Kentucky.

Relying on the testimony of the vocational expert, the ALJ concluded that a significant number of jobs are available in the economy for which the claimant is capable of performing.

---

[2]The ALJ noted that the claimant's active functions of daily living include caring for her five-year old child, performing household chores, shopping, driving, and maintaining her home.

5

Accordingly, the ALJ found the claimant was no longer disabled and that benefits were properly ceased on September 1, 2001.

The claimant first argues that the ALJ did not give adequate consideration to the opinions of her treating physician, Dr. Varghese, or the one-time examining physician, Dr. Pampati. The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well -supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may reject it, provided that good reasons are specified. Bogle v. Sullivan, 998 F.2d 342, 347-49 (6th Cir. 1993).

Dr. Varghese treated the claimant on three occasions for ear infections. Dr. Varghese did not provide a functional capacity assessment. Instead, he provided a letter to the Administration explaining claimant needs expensive medication to prevent rejection of the transplanted kidney and that she will be unable to afford the medication without Social Security assistance. Dr. Varghese, then concluded, without providing any objective support, that "[t]he medications cause side effects of fatigue, nervousness and irritability which prevent her from being able to work. She continues to be disabled." (AR 245).

A statement as to whether the claimant is disabled is not a medical opinion. A medical opinion is a statement from an acceptable medical source that reflects judgments about the nature and severity of the impairment, including symptoms,

6

diagnosis and prognosis, and what a claimant can still do despite her restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The commissioner is not required to accord Dr. Varghese's conclusion that the claimant is disabled with controlling weight because this is a legal conclusion and a decision reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1), 416.927(e)(1).

Further, Dr. Varghese's statements are not supported by any objective evidence. Dr. Varghese did not treat the claimant for symptoms associated with her kidney condition, side effects of medication or fatigue in general. Instead, Dr. Varghese treated the claimant for ear infections. The court finds that Dr. Varghese opinion is not supported by objective medical evidence and that the ALJ did not err in not crediting it with substantial weight. See Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001).

Similarly, Dr. Pampati, a one-time examining physician, also gave a general statement finding the claimant "completely disabled." (AR 391). As discussed above, this is a legal conclusion and a decision reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1), 416.927(e)(1). Accordingly, the ALJ did not err in giving this statement of disability no weight.

In addition, Dr. Pampati's statement that "steroid myopathy is also a consideration, which may contribute to fatigue, weakness, etc." is not a diagnosis as represented by the plaintiff. This statement of possibility is not based upon objective medical evidence. As discussed above, the ALJ explained he gave little weight to Dr. Pampati's statement

7

because it was not supported by objective evidence. Dr. Goldin, testified at the hearing that Dr. Pampati was taking claimant's subjective complaints and combining them with his clinical judgment without the benefit of lab work or objective findings to support his statements. The court finds the ALJ gave adequate reasons for not crediting Drs. Varghese and Pampati's findings.

The claimant also argues that the ALJ did not adequately address the affect that the side effects of her medications have on her ability to function as required by Judge Unthank's remand order. The court finds otherwise.

The ALJ stated that the claimant's attorney articulated his theory of the case is "disability secondary to 18 years of steroid use with 'side effects.'" (AR 290). The ALJ rejected this theory and explained that Dr. Goldin opined that steroid-induced myopathy was not a black and white situation: many people have muscle aches and do not have myopathy. Dr. Goldin opined that the claimant's medical records do not support a finding of steroid-induced myopathy and he discounted a suggestion to the contrary.

The ALJ also noted that at least two consulting physicians had discounted claimant's claims of extreme fatigue. Dr. Helms, a consultative examiner, found no side effects from the transplant. Dr. Jackson, another administrative medical expert, testified in 2002 that he found no objective evidence of fatigue and nothing in claimant's recovery suggested that she suffered from any complications. Dr. Jackson also noted that there was

8

only one complaint of severe fatigue in the record and that was made in 2002.  (AR. 45, 49).  Accordingly, the court finds the ALJ did consider the claimant's claim of adverse side effects from her medication and found that her claim was not supported by the medical record.

The court finds that the record is clear that the claimant has had medical improvement since December 1986.  She admits her new kidney is working properly.  No physician has opined that she has not improved since her transplant.  The only functional capacity assessments provided by the physicians indicate that the claimant can perform at least at the sedentary level.  The ALJ gave sufficient reasons to find that the claimant could perform at a limited range of light work.  The court also finds that the ALJ gave the claimant the benefit of the doubt and provided adequate restrictions to accommodate the plaintiff's claims of Menier's disease and carpal tunnel syndrome.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel,17 Fed. Appx. 298(6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence.  Accordingly, the claimant is no longer

9

disabled within the meaning of the Social Security Act and the Commissioner properly ceased the payment of benefits. The ALJ's decision is affirmed, pursuant to sentence four of 42 U.S.C. § 405(g).

The court being advised,

**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 10) be, and it is, hereby **denied,** and that the motion of defendant for summary judgment (Doc. #12) be, and it is, hereby granted. That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 19th day of November, 2007.



**Signed By:**
*William O. Bertelsman* WOB
**United States District Judge**